J-A23011-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| AMERICAN EXPLORATION COMPANY, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN M. HARIM, JR., AND SALLY D. HARIM, His Wife, | : | |
| | : | |
| Appellees | : | No. 695 WDA 2014 |

Appeal from the Order entered on April 4, 2014
in the Court of Common Pleas of Fayette County,
Civil Division, No. 2167 of 1997 G.D.

BEFORE: GANTMAN, P.J., LAZARUS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED OCTOBER 22, 2015**

American Exploration Company ("American" or "Plaintiff") appeals from the Order denying its Motion to Enforce Settlement Agreement ("Motion to Enforce") pertaining to an oil and gas lease ("Lease"), which American's predecessor-in-interest entered into on February 25, 1995, with John M. Harim, Jr., and his wife, Sally D. Harim ("the Harims" or "Defendants"). This Order also denied American's Motion for Preliminary Injunction ("Motion for Injunction").[1] We affirm.

In its April 4, 2014 Opinion and Order, the trial court concisely set forth the relevant facts and procedural history underlying this appeal, as well as the parties' respective positions concerning American's Motion to Enforce.

---

[1] American does not challenge on appeal the trial court's denial of the Motion for Injunction.

*See* Trial Court Opinion and Order, 4/4/14, at 1-5.[2]  We incorporate the court's recitation herein by reference.  *See id.*[3]

As an addendum, and by means of background, we observe the following.  The Harims own an approximately 110-acre parcel in Fayette County ("the Property").  In 1995, the Harims leased the oil and gas rights to the Property to American's predecessor-in-interest under the Lease, for a primary term of two years.  Subsequently, the Well was drilled on the Property.

The relevant provisions of the Lease provide as follows:

5(d)[.]  This [L]ease shall continue in full force so long as there is a well or wells on leased premises capable of producing oil and gas even though all such wells are shut in and not produced by reason of the lack of a market at the well or wells …, or for any other reasons, but in such event[, American] shall … pay to the [Harims] … a sum equal to the annual rental provided for in [the Lease], as royalty, and thereby maintain this [L]ease in force and effect for each annual period covered by such payment[.]  …

\* \* \*

15[.]  All of [American's] obligations and covenants hereunder, whether express or implied, shall be suspended at the time[,] or from time to time[,] as compliance with any thereof is

_____

[2] To the extent the trial court states, on page 3 of its Opinion, that "[a]t some unspecified time between 2005 and 2012, Atlas[ Resources]'s pipeline system was purchased by *Williams*[,]" Trial Court Opinion and Order, 4/4/14, at 3 (emphasis added), the court refers to The Williams Company, Inc., a national energy company specializing in natural gas.

[3] American challenges on appeal the trial court's factual finding, concerning the natural gas well at issue herein ("the Well" or "Harim Well 109"), that "[t]here is no dispute that Harim Well 109 has never been put into production[.]"  Trial Court Opinion and Order, 4/4/14, at 2; *see also* Brief for Appellant at 16.

prohibited, prevented, or hindered by[, *inter alia*,] … inability to obtain materials in the open market or transportation thereof …[,] or other conditions or circumstances not wholly controlled by [American], and this [L]ease shall not be terminated in whole or part …. Should such prohibitory condition continue throughout the remainder of the primary term of the [L]ease, then [American] may extend the primary term of this [L]ease from year to year beyond the original 2 year primary term by continuing the payment of the annual rentals provided for herein ….

16[.] In the event that [the Harims] consider[] that [American] has not complied with all covenants, conditions and obligations hereunder[,] both expressed and implied, [the Harims] shall notify [American] in writing, setting out specifically in what respects it is claimed that [American] has breached this contract, and [American] shall not be liable to [the Harims] for any damages caused by any breach of a covenant, condition or obligation[,] express or implied, occurring more than sixty (60) days prior to the receipt by [American] of the aforesaid written notice of such breach. …

Lease, 2/25/95, ¶¶ 5(d), 15, 16.

Following litigation between the parties in the ensuing years concerning the enforceability of the Lease, they entered into a settlement agreement in October 2004 ("the Settlement Agreement"), as well as a Ratification of the Lease. The trial court entered an Order (hereinafter "the Settlement Order"), which memorialized the terms of the Settlement Agreement. The provision of the Settlement Order relevant to this appeal provides as follows:

9. Upon the [c]ourt's entry of this Order of Court, [American], its successors and assigns, shall be free to enter upon the [Property] for the conduct of all gas well operations authorized under the [L]ease, and specifically for undertaking the **immediate** production and marketing of gas from the Harim Well [] 109[,] located on [the P]roperty[.]

- 3 -

J-A23011-15

Settlement Order, 10/24/04, at ¶ 9 (emphasis added).

On May 28, 2013, American filed its Motion to Enforce and Motion for Injunction. By the Opinion and Order entered on April 4, 2014, the trial court denied both Motions. The Order provided, in relevant part, as follows:

> [T]he [] Motion to Enforce … is denied for the reason that the Settlement Agreement concerned an oil and gas Lease, executed in 1995, which has long since expired under its own terms due to [American's] failure to act in accordance with the terms thereof[,] as formalized in the directives and mandates set forth in the [trial] court's [Settlement] Order[.] …

Trial Court Opinion and Order, 4/4/14, at 10 (some capitalization omitted).

American filed a Motion to reconsider the April 4, 2014 Order, which was denied. American timely filed a Notice of Appeal, after which the trial court ordered it to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. American timely filed a Concise Statement.

On appeal, American presents the following issue for our review: "Whether the [trial c]ourt erred in not enforcing the [S]ettlement [A]greement[,] and [by] invalidating the [L]ease[,] where the record reveals that [American] did not breach any contractual duty to [the Harims] in any material way?" Brief for Appellant at 4.

> Our standard of review of a trial court's grant or denial of a motion to enforce a settlement agreement is plenary, as the challenge is to the trial court's conclusion of law. We are free to draw our own inferences and reach our own conclusions from the facts as found by the trial court. However, we are only bound by the trial court's findings of fact which are supported by competent evidence.

- 4 -

*Casey v. GAF Corp.*, 828 A.2d 362, 367 (Pa. Super. 2003) (citation omitted).

The Pennsylvania Supreme Court has observed that an oil and gas lease

> is in the nature of a contract and is controlled by principles of contract law. It must be construed in accordance with the terms of the agreement as manifestly expressed, and the accepted and plain meaning of the language used, rather than the silent intentions of the contracting parties, determines the construction to be given the agreement.

*T.W. Phillips Gas and Oil Co. v. Jedlicka*, 42 A.3d 261, 267 (Pa. 2012) (citations, internal quotation marks and brackets omitted). The interpretation of a lease, or any contract, is a question of law and this Court's scope of review is plenary. *Humberston v. Chevron U.S.A., Inc.*, 75 A.3d 504, 509 (Pa. Super. 2013).

Before reaching the remainder of American's arguments, we must address its claim that the record belies the trial court's factual finding that the Well has never been put into production. *See* Brief for Appellant at 16; *see also* Trial Court Opinion and Order, 4/4/14, at 2. In support of its allegation that "th[e] Well was previously an actively producing Well[,]" Brief for Appellant at 16, American summarily cites to two pages of the transcript

from the hearing on the Motion to Enforce.[4] These two pages contain the testimony of two of American's employees, Timothy Matthews ("Matthews") and James Howard ("Howard"). *Id.* (citing N.T., 8/19/13, at 19 (wherein, responding to the Harims' counsel's question as to whether American knew, at the time of the Settlement Agreement in October 2004, that there was no capacity in the pipeline to produce gas from the Well, Matthews stated that "[w]e had [the Well] on line for some period of time."), and *id.* at 25 (wherein Howard stated that, when he first became employed with American, in approximately 1997, "we had put [the Well] online and it was producing[.]")).

Even assuming, *arguendo*, that American is correct in asserting that the Well had been producing at some *prior* time, the record reveals evidence that, at all relevant times to the instant dispute, the Well was not in producing status. *See, e.g.*, American's Memorandum of Law in support of Motion to Enforce, 10/10/13, at 3-4 (unnumbered) (wherein American conceded that "until [it had] signed a[] purchase agreement with Atlas Resources [in 2012], there was no access to and no capacity in the pipeline

---

[4] Because American merely cited to the two pages of testimony, but otherwise failed to adequately develop this claim or identify which portion of the testimony was relevant, we could deem it waived. *See Umbelina v. Adams*, 34 A.3d 151, 161 (Pa. Super. 2011) (stating that "[w]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." (citation omitted)); *see also* Pa.R.A.P. 2119(a). Nevertheless, we will briefly address American's claim.

to produce gas from the Harim 109 Well." (citing N.T., 8/19/13, at 16 (testimony of Matthews)). Accordingly, we cannot agree with American that the trial court's finding in this regard lacks support in the record.

American argues that the trial court erred by denying the Motion to Enforce because American had performed all of its obligations pursuant to the Lease, and the record belies the court's finding that American had failed to comply with the terms of the Settlement Agreement and Settlement Order. Brief for Appellant at 13; **see also id.** at 22 (citing, *inter alia*, **Miller v. Clay Township**, 555 A.2d 972, 973 (Pa. Cmwlth. 1989) (stating that "[j]udicial policy favors the settlement of lawsuits and in the absence of fraud and mistake the courts will enforce an agreement to settle a legal dispute.")). American concedes that the Well was "shut in" at the time of the Settlement Agreement and thereafter, but points out that American had paid annual shut in royalties to the Harims every year, pursuant to paragraph 5(d) of the Lease. Brief for Appellant at 14.

Additionally, American argues that the trial court erred in failing to acknowledge that, in violation of paragraph 16 of the Lease, the Harims never gave American notice of any alleged breach of the Lease. **Id.** at 17. According to American, "[the] Harim[s'] admission that [they] failed to provide Paragraph 16 written notice deprives them of any argument that … the [L]ease was [] somehow invalid." **Id.**; **see also id.** at 19 (asserting that "[i]t was not until the evidentiary hearing that [the Harims,] for the first

time[,] claimed that [American] had failed to comply with the terms of the [S]ettlement [A]greement.").

Moreover, relying upon paragraph 15 of the Lease, which, American maintains, "specifically contemplates challenges in transportation in the marketplace[,] and creates a mechanism to extend the [lease] term[,]" American contends that the trial court improperly overlooked this paragraph, and American's "regular efforts, albeit lengthy, to get the Well back into production." *Id.* at 19.

Finally, American argues that "[t]he trial court essentially held that [American] forfeited its rights under the [L]ease because too much time [had] elapsed before resuming production. … [However, the] Lease does not contain any provision whatsoever for automatic forfeiture[.]" *Id.* at 23 (citing **Schwartz v. Rockey**, 932 A.2d 885, 898 (Pa. 2007) (stating that "the law abhors forfeitures and penalties and enforces them with the greatest reluctance when a proper case is presented.") (citation and quotation marks omitted)).

In its Opinion and Order, the trial court cogently set forth the relevant law concerning oil and gas leases, addressed American's claims, and determined that they lack merit. **See** Trial Court Opinion and Order, 4/4/14, at 6-9. Our review discloses that the trial court's analysis is sound and

supported by the record, and we discern no error of law or abuse of discretion in the court's determination. **See id.**[5]

As an addendum, we are unpersuaded by American's claim that the Harims are precluded from claiming that the Lease is no longer valid because of their failure to give American proper notice pursuant to paragraph 16. Rather, we agree with the trial court's following discussion concerning paragraph 16: "[The Harims] contend that Paragraph 16 of the Lease does not actually require written notice of an alleged breach, but rather limits damages for a breach to those allegedly arising after notice is given in accordance with this provision. [The Harims] are not seeking monetary damages …." **Id.** at 5; **see also** Brief for Appellees at 8. Though the trial court did not explicitly state that it agreed with the Harims' position, it is clear that it was not persuaded by American's argument concerning the lack of notice. We discern no error of law or abuse of discretion in the trial court's determination, as it is supported by a plain reading of the Lease. Furthermore, even assuming, *arguendo*, that the Harims failed to comply with paragraph 16 in this regard, it does not preclude them from raising a claim that the Lease is no longer valid.

---

[5] To the extent that the trial court's findings were based upon its credibility determinations, **see** Trial Court Opinion and Order, 4/4/14, at 7, we may not disturb such findings. **See Gillingham v. Consol Energy, Inc.**, 51 A.3d 841, 861 (Pa. Super. 2012) (observing that the fact-finder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses).

Moreover, we find no merit to American's claim that the trial court had improperly implied an automatic forfeiture provision into the Lease. Rather, the court correctly determined that the Lease had expired under its own terms. Accordingly, we affirm based on the trial court's analysis with regard to American's sole issue on appeal, *see* Trial Court Opinion and Order, 4/4/14, at 6-9, and conclude that the court correctly denied American's Motion to Enforce.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/22/2015

IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY, PENNSYLVANIA
CIVIL DIVISION

AMERICAN EXPLORATION COMPANY

                    Plaintiff,      : NO. 2167 OF 1997, G.D.

     vs.                     : NO. 1994 OF 2011, G.D.

                                   :

JOHN M. HARIM, JR.

and SHERRY D. HARIM, his wife,      :

                 Defendants

**OPINION and ORDER**

**WAGNER, P.J.**

Before the Court is a Motion to Enforce Settlement Agreement and Motion for

Preliminary Injunction concerning one gas well hereinafter referred to as "Harim Well 109." At

issue is an Oil and Gas Lease, dated February 25, 1995, and entered into by Defendants as

Lessors and Plaintiff as assignee of EOG Resources, Inc., sole owner of the lease. The terms of

the Settlement Agreement were incorporated into a Court Order dated October 24, 2004, and the

Lease at issue was Ratified in accordance therewith.

As can be readily ascertained by a quick perusal of the document, the February 25, 1995

Lease was for a specifically stated term of two years. In 2004, Defendants claimed that the Lease

was no longer valid because Plaintiff had failed to bring the well into production within the

original lease term and requested a full hearing on the matter. The Court complied with

Defendants' request and held a hearing on October 24, 2004, but neither Defendant appeared,

although they were represented by counsel who attended and their agent, John Harim, Sr. The

evidence presented by Plaintiff at the hearing, and the arguments of counsel, led to a settlement

1

agreement,[1] a Ratification of the 1995 Lease, and the entry of a Court Order dated October 24, 2004 which formalized the settlement's terms and made the directives mandatory. Among those directives is that set forth in Paragraph 9, which expressly states that upon entry of the Order, Plaintiff shall be free to enter upon Defendants' land so as to conduct all necessary gas well operations authorized by the Lease, "and specifically for undertaking the immediate production and marketing of gas from the Harim No. 109 Well..."

There is no dispute that Harim Well 109 has never been put into production, although Plaintiff asserts that the first opportunity to do so occurred in 2012. See N.T., Motion to Enforce Settlement Proceedings, August 19, 2013, p. 4. Defendants now oppose the instant Motion to Enforce, claiming that the lease has expired and is no longer valid because of the failure to produce from the well in an "immediate" fashion as directed to do so in the 2004 Court Order. Id. p. 7.

Hearing on the instant Motion was held on August 19, 2013, at which time Timothy Matthews, a vice president with Plaintiff who is responsible for well operations, testified that he was present in court at the time of the 2004 settlement conference and hearing, and received a copy of the Court's Order arising therefrom and based thereon. Id. pp. 11-12. Matthews stated that all of Plaintiff's property in Fayette County, Pennsylvania, all wells and the pipelines connected thereto, with the exception of Harim Well 109, had been sold to Atlas Resources (hereinafter "Atlas") prior to the Court's 2004 Order. N.T. p. 13. It is not clear from the testimony in the most recent hearing whether Plaintiff apprised Defendants and/or the Court of that factual circumstance during the October 24, 2004 hearing, and the Court has no independent

---

[1] The settlement agreement itself was orally placed into the record prior to the issuance of the Order. However, the court stenographer's notes from the hearing are missing and were not transcribed. Thus, the provisions of the Order are the best evidence of the terms of the settlement.

2

memory concerning the fact. Subsequent to the settlement agreement, the Ratification of the Lease, and the said October 24, 2004 Order, Plaintiff tried to sell Harim Well 109 to Atlas also, but Atlas opted not to buy it. Id. p. 12-14. According to Matthews, Plaintiff had an agreement with Atlas to sell gas through its pipeline system, since it had chosen not to buy the well. Id. p. 14. The Court notes that no agreement between Plaintiff and Atlas for the sale of Plaintiff's gas was entered into the record as an evidentiary exhibit.

Unfortunately, very soon after the above-referenced settlement between these parties at this case number was reached and the Court entered its Order, Atlas told Plaintiff it had no capacity in its pipeline to transport the gas from Harim Well 109. Id. p. 14. Matthews then "periodically" contacted Atlas to make inquiry about pipeline capacity; as stated by him, "I would try to call him (sic) once a year to see if they (sic) had any capacity." Id. pp. 14-15. Matthews reiterated that by the time of the entry of the Court's Order formalizing the settlement agreement between these parties, Plaintiff had already sold its pipeline to Atlas, and admitted that without pipeline capacity to transport the gas, Plaintiff was unable to produce gas from the Harim Well 109. Id. pp. 16, 19-20.

At some unspecified time between 2005 and 2012, Atlas' pipeline system was purchased by Williams. Id. p. 15. When Matthews, on behalf of Plaintiff, contacted Williams in 2012, Williams indicated it had capacity, and Plaintiff and Williams then entered into a gas purchase agreement for the Harim Well 109. Id. Because the well was not in production, Plaintiff paid the annual shut-in royalties to Defendants as called for by the provisions in paragraph 15 of the lease. Although the shut-in royalty payments were tendered to Defendants from 2005 through 2012, none of the royalty checks for those years were cashed. Id. pp. 16-17. Other than the sending of the royalty checks, Plaintiff had no contact with Defendants during those years. Id. p.

3

19-20. On May 2, 2012, after finally finding capacity in the pipeline through Williams, almost eight years after the settlement agreement and the entry of the Court's October 24, 2004 Order, Plaintiff sent its agent James Howard, vice president of field operations, to Defendants' property to turn the Harim Well 109 back online, at which time Defendants' agent, John Harim, Sr., told him to leave. Id. pp. 27-28, 31. At that time, for the first time, Mr. Harim, Sr., told Mr. Howard that he was not allowing him to turn the well back on because Plaintiff had not performed under the settlement agreement, the Ratification of the original lease, and/or the Court Order of October 2004. Id. p. 61.

In its Memorandum in support of its motion, Plaintiff argues that the original Lease is still valid, being the subject of the Ratification (entered into evidence as Plaintiff's Exhibit 3). It relies on its payments of annual shut-in royalties, made to Defendants because admittedly the Harim Well 109 was not in producing status (see Memorandum p.4), as evidence of the lease's validity and its own good faith in allegedly "act[ing] immediately, diligently and prudently" to move the Harim Well 109 into production. Id. Plaintiff also emphasizes its own self-serving testimony that it "acted with due diligence and in accordance with industry standards in 'regularly' inquiring as to pipeline availability, citing the testimony of Timothy Matthews that his "periodic," once-a-year inquiry to Atlas concerning pipeline access is the usual and customary method to make inquiry in the oil and gas industry. N.T. p. 23. The Court notes that Plaintiff did not produce any documentary or expert evidence to support Matthews' uncontradicted, but also uncorroborated, testimony in this regard. Additionally, Plaintiff, in reliance on Paragraph 16 of the original Lease, which requires Defendants herein as the Lessors to give Plaintiff as Lessee at least sixty days' written notice of any alleged breach of the Lease, argues that Defendants failed to give the required notice at any time between October 2004,

4

when the settlement and Ratification occurred, and May 2012, when James Howard encountered John Harim, Sr. on the property. See N.T., oral argument transcribed as part of the Hearing Proceedings; see also Memorandum pp. 4-6.

In opposing the instant Motion to Enforce, Defendants contend that Paragraph 16 of the Lease does not actually require written notice of an alleged breach, but rather limits damages for a breach to those allegedly arising after notice is given in accordance with this provision. Defendants herein are not seeking monetary damages, but rather claim that the failure to produce from Harim Well 109 because of lack of pipeline capacity constitutes a material breach of the the Ratification of the original Lease, as well as the settlement agreement and the Court's Order of October 24, 2004. In addition, Defendants cite the language of the Order that specifically directed Plaintiff to undertake the "immediate production and marketing of gas" from the Harim Well 109. It is Defendants' position that an almost-eight-year lapse between October 2004 and May 2012 is not, and cannot be reasonably construed as, "immediate" as required by the Order. Defendants argue that Plaintiff knew at the time of settlement and Ratification that it no longer owned the necessary pipeline to carry the gas, and it knew as early as April 2005 that it could not bring Harim Well 109 into production in compliance with the Order because Atlas informed it that there was no pipeline capacity. Defendants' Memorandum pp.19-20. Based on the foregoing circumstances, Defendants now claim that Plaintiff's failure to comply with the Order for immediate production of the well, also constitutes a material breach of the Ratification of the Lease and the settlement agreement, which has caused the Lease to be terminated and/or abandoned by Plaintiff.

An oil and gas lease is in the nature of a contract and is controlled by principles of contract law, to be construed in accordance with the terms of the parties' agreement as expressed

5

and by the accepted and plain meaning of the language used. Southwestern Energy Prod. Co. v. Forest Resources, LLC. et al., 83 A.3d 177 (Pa.Super. 2013). Such a lease reflects a conveyance of inchoate property rights, initially for the purpose of exploration and development. McCausland v. Wagner, 78 A.3d 1093 (Pa.Super. 2013). If the development is unsuccessful during the primary term of the oil and gas lease, no estate vests in the lessee, but if gas is produced, then the right to produce becomes vested and the lessee acquires a property right to extract the same according to the terms of the lease, for the benefit of both parties. Id. In interpreting instruments relating to oil and gas interests, the object is to ascertain and effectuate the intention of the parties. Id. Where the lease contract refers to and incorporates the provisions of other writings, all of the documents shall be construed together. Southwestern Energy, *supra*. Where an oil and gas lease sets forth a primary term for the leasehold and requires the payment of shut-in or delay royalty payments, the payments relieve the lessee of its obligation for that primary lease term, but once that primary term expires, the mere payment of shut-in or delay royalties, alone, does not preserve the lessee's drilling rights. Hite v. Falcon Partners, 13 A.3d 942 (Pa.Super.2011). When the primary lease term ends without commencement of production by the lessee, the lease contract expires. Id.

In light of the just-recited legal principles and authority, the Court has carefully considered the parties' respective positions and has read and re-read the Lease with all of its paragraphs, and of course, the Court has taken into account its own Order of October 24, 2004. Based upon its reading and consideration and its understanding of the case law cited above, the Court finds that Plaintiff is an established commercial oil and gas company and, by its own admission, is familiar with the practices and usual customs of that industry. N.T. p. 23. Although Plaintiff has presented testimonial evidence from its employees and agents that it intended to

6

fulfill its obligation to start "immediate" production from Harim Well 109 as directed by the Court's Order, the Court gives very little weight to such self-serving testimony since Plaintiff's "intention" to meet its contractual obligations is simply the good faith required in every contractual setting.

The Court agrees with Defendants that the definition of "immediate" production from the well, as clearly expressed in the October 24, 2004 Order, cannot be reasonably construed to encompass a time period of almost eight years. The Court finds that a reasonable expectation concerning the maximum period of time for "immediate" production to commence would be within the two year term set forth in the original Lease, counting from the date of the 2004 Ratification thereof. The Court finds Plaintiff's claims that it did not know at the time of the 2004 settlement agreement and Order that Atlas would not buy the Harim Well 109 and/or that transmission capacity in the line necessary for production was unavailable, to be unpersuasive and less than credible. Plaintiff, as an established oil and gas producer, should have known, and could have discovered, the existing transmission capacity (or lack thereof) of the gas pipelines, since Plaintiff itself had previously sold those same transmission lines to Atlas, and knew it was therefore totally dependent on that company for transmission capacity before it came to the hearing in October 2004. The Court finds it inconceivable that an established commercial drilling and production company like Plaintiff would not have ascertained the availability of pipeline capacity for its gas prior to agreeing to bring its well into "immediate" production when the failure to produce from that well was the underlying issue in the 2004 litigation. The Court further finds that a once-a-year checking for transmission capacity, as Timothy Matthews testified to, is not reasonable, commercially or otherwise, when Plaintiff was subject to a Court

7

Order and had a contractual duty to produce from the Harim Well 109 in an immediate, as soon as possible, time period.

A lease, such as the one at issue, which contains an option to renew or a clause which provides for the leasehold interest to continue beyond the prescribed term of years, see Lease paragraph 5(d), is the typical and customary lease language in oil and gas leases today. Hite, *supra.*, citing Jacobs v. CNG Transmission Corp., 332 F.Supp.2d 759 (W.D. Pa.2004). Delay rentals and or shut-in royalties have a well-settled meaning in the oil and gas industry. Id. Royalty-based leases are to be construed in a manner so as to promote the full *and diligent* development of the leasehold for the *mutual benefit of both* parties (emphasis added). Id. The courts of this Commonwealth, as well as those of the federal circuits, have long, and consistently, held that the mere payment of delay rental and/or shut-in fees is insufficient to create a vested on-going property interest and/or a perpetual term for the lessor who drafted the clause unless the intention is expressed in clear and unequivocal terms. Id. If the leasehold could be extended in perpetuity by the lessor simply by payment of shut-in royalties, there would be no need for the parties to agree on a specific primary term, instantly two years. See Id. As unequivocally expressed by the Hite court, "... in light of the traditional understanding in the oil and gas industry, and case law applicable to this subject matter, the terms of the leases limited the privilege of foregoing production through the payment of delay rental to the [...] primary term enunciated therein." Hite at 947. Thus, Plaintiff cannot rely on paragraph 5 of the Lease at issue and its annual shut-in payments to Defendants as a means for it to stave off expiration of the Lease.

Additionally, the Court is cognizant of paragraph 15 of the Lease, which suspends Plaintiff's obligations and covenants "from time to time" when compliance is "prevented or

8

hindered" by, inter alia, "inability to obtain materials in the open market or transportation thereof ... or other conditions or circumstances not wholly controlled by Lessee," and which allows Lessee to "extend the primary term of this lease from year to year beyond the original 2 year primary term by continuing the payment of the annual rentals..."a commercial oil and gas company, such as Plaintiff, knows or should know the absolute necessity of transmission of its product because it knows or should know that the inability to transport the gas is tantamount to an inability to produce the gas. Based on what it knew or should have known, Plaintiff could have refused to sell its pipeline to Atlas, or prior to selling, could have, and certainly should have, negotiated a reservation of the right to use at least some capacity in the transmission lines it sold so as to be able to produce from the Harim Well 109. Thus, the Court finds that paragraph 15 is inapplicable to the situation herein because the Plaintiff as Lessee caused its own harm when it voluntarily sold all of its gas transmission pipelines without any guaranty of transmission capacity for the gas produced by Harim Well 109. See Allegheny Energy Supply Co., LLC v. Wolf Run Min. Co., 53 A.3d 53 (Pa.Super. 2012).

In light of the foregoing discussion, the Court concludes that the Lease of 1995, as Ratified in 2004, relative to Harim Well 109 has expired and is no longer valid, in that Defendants as Lessors have indicated that they do not wish to extend the said Lease for any additional length of time, and Plaintiff, as Lessee, has failed to comply with the settlement agreement and the terms of the October 24, 2004 Order, which mandated "immediate production" of gas from the said well. Accordingly, the Court enters the following:

9

IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY, PENNSYLVANIA
CIVIL DIVISION

AMERICAN EXPLORATION COMPANY
                                   Plaintiff,      : NO. 2167 OF 1997, G.D.

         vs.                                  : NO. 1994 OF 2011, G.D.

JOHN M. HARIM, JR.
and SHERRY D. HARIM, his wife,
                            Defendants

**ORDER**

Wagner, P.J.

AND NOW, April ____**4**____, 2014, the within Motion to Enforce Settlement Agreement is hereby DENIED for the reason that the Settlement Agreement concerned an Oil and Gas Lease, executed in 1995, which has long since expired under its own terms due to Plaintiff's failure to act in accordance with the terms thereof as formalized in the directives and mandates set forth in the Court's Order dated October 24, 2004. The Motion for Preliminary Injunction is likewise DENIED in that any rights that Plaintiff may have had that could be the subject of injunctive relief arose from the Settlement Agreement and Ratification of the original 1995 Lease, which is no longer operative.

BY THE COURT:

_____, P.J.

ATTEST:

_____
Prothonotary

10

IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY, PENNSYLVANIA
CIVIL DIVISION

AMERICAN EXPLORATION COMPANY                :
                                      Plaintiff,      : NO. 2167 OF 1997, G.D.
          vs.                                   : NO. 1994 OF 2011, G.D.
                                              :
JOHN M. HARIM, JR.,                             :
and SHERRY D. HARIM, his wife,                  :
                                      Defendants

**ORDER**

WAGNER, P.J.

AND NOW, March __31__, 2104, after due consideration of the entire record of this consolidated case, the Stay of this matter entered on January 21, 2014, pursuant to the Motion of Defendants, is hereby LIFTED. In light of the record, the Court finds that its determination of Plaintiff's Motion to Enforce Settlement will necessarily involve a declaration as to the validity of the lease between the parties. Therefore, the Court further finds that Defendants' Declaratory Judgment action filed on October 7, 2013, is redundant and unnecessary, and thus the said action is now DISMISSED.

BY THE COURT:

_____,P.J.

ATTEST
_____
Prothonotary